Good morning, Your Honor. May it please the Court, I'm Attorney Nora Milner, and I'm representing plaintiffs in this case. Four complex issues were presented in our petition for review, but in the interest of expediency and an opportunity with the permission of the Court, I'd like to focus today on two of those issues that I believe will clearly take up enough of my ten minutes. The first issue is that whether the application of the one-year time bar to my client's case was an error. Our position in the case is that indeed it was. The 1993 asylum application that my client filed sadly remained pending until 2006. He was not even interviewed by the Immigration Service until 2006. At that time, after an interview, he was referred to an immigration court. Unfortunately for him, he obtained poor counsel, and due to the ineffective assistance of his counsel, he lost that case. Basically, severe malpractice took place, and that individual, the attorney, was actually suspended by the state bar. My client, the plaintiff, thereafter, unfortunately after another malpractice case where he filed an appeal So at that point, he knew that he had a bad lawyer? He did, Your Honor. Okay. Why didn't that trigger the one-year period right there? Excuse me, Your Honor. Why didn't that trigger the start of the one-year period right there? The one-year period actually started to run as soon as this case was denied. You're absolutely correct. However, our position is that the filing of the motion to reopen in 2011 to the Board of Immigration Appeals, accompanied by the 2011 application for asylum, which serves as the foundation for the motion to the Board, the Board will not accept the motion without an underlying application for relief. Our position is that the Board looked at that case. They knew that the 1993 application had been lost, and the government did not oppose the reopening of that case. That's right. The Board granted the case and went back to the immigration court. But the government didn't concede that the client complied with the one-year period. That's correct, Your Honor. We just simply said, look, we don't disagree that he had a bad lawyer, and we don't oppose reopening on grounds that he was badly represented. Correct. But the one-year period started way back. We can forgive him the time that he spent under the thrall of a bad lawyer, which is many, many years, 1993 to 2006, maybe? Six. At that point, the clock starts running again, and he's not back with a petition until 2011. And as far as your brief is concerned, I think you claim the 2013 petition is the applicable one, right? No, Your Honor. We're claiming that the 2011 should not be time-barred because his case meets one, if not both, of the exceptions of INA Section 208A to B in that first extraordinary circumstances. What were the extraordinary circumstances after he realized he had ineffective assistance? Specifically, Your Honor, the 2011 application we're indicating to the court that due to the ineffective assistance of counsel that plaintiff received on the 1993 application, the circumstances were beyond the control of petitioner. He had no ability. There was a 2009 application, too, right? No, Your Honor. The 2009 was a Board of Immigration Appeals to the board after the EOIR case was lost. So you're not relying on anything that happened in 2009? No, Your Honor. That case, actually, that was an appeal to the board done, unfortunately, by the same attorney that committed further malpractice on petitioner. He did not even know that that was a baseless appeal until later on. So, effectively, plaintiff was left not really even understanding because he didn't even understand what was happening. So he's been in the United States since 1986? That's correct, Your Honor. And how old was he when he came? He was approximately... There's a discrepancy in the record. One says... He... One place it says he came in 1979 at age 9, and in another place it says he came in 1986 at the age of 16. No, Your Honor. He came to... He left his country. He left Guatemala when he was 9, and he is today approximately 45 years old. He entered the United States in 1986. He filed his first application for asylum in 1993. And that case remained pending until 2006. That would have been time barred, too, by the 1-year bar, even if he hadn't had an effective... The 1-year bar, Your Honor, did not become effective until 1995. When he became 18, is that what you're saying? Or 21? No, Your Honor. That has nothing to do with the asylum application. The 1-year bar was instituted in 1995. Enacted. Enacted. All cases filed after 1995 were then subjected to a 1-year bar. In 1993, when he applied, he did not have that 1-year bar. Okay. What was that? What law enacted the 1-year bar? Was that...? Well, it was instituted in 1993. It was probably, I believe to the best of my knowledge, it was a part of M. Act 1990. But it was not effective on any asylum cases until 1995. Could you tell me, remind me, what the ineffectiveness was of his first counsel? Yes, Your Honor. Basically, his first counsel failed to file any applications for relief. When the asylum office referred the case to the immigration court, plaintiff appeared with Attorney Gonzales, and apparently Attorney Gonzales requested a number of continuances and never filed any applications for relief. Ultimately, the immigration court ruled that for failure to file any applications, it was deemed abandoned, and therefore he lost his case. He, therefore, was encouraged by attorneys... No, Your Honor. It was failed. He lost it because it was deemed abandoned, because his attorney failed to file any applications for relief on that case. Would he have prevailed since it's clear that he had left the United States? Many times. He did, Your Honor. There's no question. And came back and gave false, under a false name. That's true, Your Honor. Whether that's, you know, at this point it's difficult to know if good quality counsel had been provided at that time, whether there could have been... I think it has nothing to do with counsel. I mean, he's claiming past persecution in fear of future persecution in a country that he's returned to more than 12 times during this period, so it kind of undermines the substance of his claim. Your Honor, he did not return to Guatemala 12 times. He crossed the border to Mexico a number of times, correct, because that was where his wife and children were living. He specifically denied that he ever returned to Guatemala. His mother died in El Salvador. Didn't he tell, in a special rural cancellation proceeding, he had an interview under oath where he said he returned to Guatemala twice? Your Honor, that case actually was never before the immigration court in 1993. That's not answering my question. Did he tell an immigration officer under oath that he had returned to Guatemala two times? He did not. He indicated in the immigration hearing that he did not say that, and those notes were never made available to him in the immigration court hearing. He didn't have access to those notes. He didn't know what the assessment said, nor was his counsel provided an opportunity to examine those notes. So the position is that the one-year bar should not be applied to his case. In addition, the existence of changed circumstances, again, relating to the... Wait a minute. The one-year bar starts to run at some point, right? I mean, he's subject to the one-year bar. Yes, Your Honor. The question is what periods does he get relief from the bar because of bad lawyers or whatever. And I still haven't gotten past 2006. Once he discovers he has a bad lawyer, why doesn't the clerk start to run again? He doesn't file an application until 2011, five years later. How do you account for those five years? Your Honor, the case was referred to the immigration court in 2007. Okay. And that's when the... Okay. That's four years. Let's give you that. Well, it was referred to the immigration court in 2007. He went to court, and that's when the ineffective assistance of counsel took place. That same attorney then had petition or file, which essentially was a frivolous application to the board, which took another two years. The board did not render a decision on that appeal until 2009. Thereafter, he was arrested and... But he claimed, he made a claim to reopen the proceedings. Correct. And when did that happen? That happened in 2011, Your Honor. He was taken into custody sometime around 2010 and was essentially ready to be removed from the United States. And that was when he filed an emergency stay and the new, and the motion to reopen accompanied by the 2000 application, 2011 application for asylum. And that was the motion that was granted and subsequently returned to the immigration court for a new hearing. At that time, the immigration court... Did he file a motion to reopen in 2009? I'm sorry, Your Honor. Didn't he? Didn't he file a motion to reopen in 2009? No, Your Honor. That was an appeal to the board based on the 2007 hearing in the immigration court. So he went to immigration court in 2007. Where is that in the record? He filed an appeal. Where is that in the record? I would have to pull my, I only brought some very brief notes, Your Honor. I'd have to pull the administrative record for you on that. But I can get, I do have it. If you'll give me a second, I can get it. You came to court without administrative record? I do have it, Your Honor, if you'll give me a second to get it. While we hear from government and you can, we'll give you a minute for a bottle and you can give me a spot sight. All right, Your Honor. Would you like me to get it now and go ahead and... Yeah, you can, your time is over. Okay, I'll... We'll hear from the government and while you're... Thank you, Your Honor. While the government is speaking, you can pull that. May it please the court. Good morning. Tracy Jones appearing on behalf of the respondent, Loretta E. Lynch. Your Honor, Kaczynski, to answer your question, in 2009, the petitioner did file a motion to reopen. That could be found on pages 511 through 512, which is the filing receipt from the Board of Immigration Appeals, which indicates that the motion was filed on 511 through 513 is the filing notice from the Board of Immigration Appeals. So you dispute what counsel said, that opposing counsel, that that was just an appeal to the board. There was a motion to reopen. There was a motion to reopen filed. And also to another point that you asked, Your Honor, there was a 2009 asylum application filed with that motion to reopen. That could be found on pages 550 to 558 of the administrative record. I'm sorry. What is that? The application for asylum that was filed with the motion to reopen can be found on pages 550 through 558 of the administrative record. I see. Okay. That was the 2009 asylum application. Yes, but this... Which opposing counsel says didn't happen. It did, Your Honor. It's right there in the record. I thought it did. And just... And why doesn't that one satisfy the timing requirement? Well, that was just the motion to reopen, Your Honor. They filed a subsequent... But you said there's an asylum application. There's one on 550. Yes. Why doesn't that one count? Because the motion to reopen was granted and went back before the immigration judge. And during the proceedings, they filed a subsequent motion to reopen that was filed in 2011. Wait a second. So the motion to reopen with the asylum application in 2009 was granted? Yes. And it went back. And it went to proceedings. Yes. And the subsequent application was filed in 2011 during the proceedings. And the 2009 motion does base it on ineffective assistance of counsel? Yes. Okay. Can we rely on those interview notes by the hearing officer who reported that Galicia stayed under oath that he'd returned to Guatemala twice? Yes, Your Honor. This court has long held that there is a presumption of regularity when it comes to official actors acting in their official duty. And in this case, those notes are an official duty being completed by the asylum officer. But haven't we recognized that asylum interview notes might be unreliable? Yes, Your Honor. And the court did hold that when they were referring to an assessment to refer because there was no determination as to whether the petitioner was placed under oath, whether they had an interpreter present, which here is not the case. If you look in the record at pages 221 and 223, and then also 308, there is an actual written oath that the petitioner signed. And then there's also a signature of the interpreter indicating that they interpreted accurately from English to the petitioner's native language, which was Spanish. Now, moving to the untimeliness of the 2011 asylum application, to be eligible, the petitioner had to file the asylum application within a year of arrival. Here, the petitioner did not do that. The last entry known was 2001, and the petitioner did not file the asylum application until 2011. The petitioner attempts to argue that it was because of extraordinary circumstances of ineffective assistance of counsel. However, that's not the case here. The petitioner obtained counsel in 2007, and the agency reopened the proceedings in 2009. The petitioner still did not file the asylum application, as Your Honor Kaczynski pointed out, until 2011, which, again, is still outside of the one-year deadline. Opposing counsel says that what happened in 2007 was by the same lawyer who was found to be ineffective. Is that right? Well, 2007 is when he began representing the petitioner in the removal proceedings. So who was representing him in 1993?  But before Mr. Gonzalez, who is the counsel that petitioner is claiming provided ineffective assistance, was Peter Muser, and I'm not sure if he was the one who represented him in 1993 with the filing of the asylum application. So the claim in that counsel is ineffective applied to which lawyer? The second lawyer, which was Mr. Gonzalez. And that took place when? In 2007. His representation of the petitioner began in 2007. And when did he make the claim that that lawyer was ineffective? In 2009, in the motion to reopen that he filed. The 2009 motion to reopen. Yes. And then the asylum petition happens two years later. I'm sorry? The asylum petition then happens two years later. Yes. Okay. Yes. That's correct, Your Honor. Now, if there's not any more questions regarding the one-time year bar, I would like to move on to the merits, which was the adverse credibility finding. Go ahead. Okay. The petitioner was deemed incredible because of numerous inconsistencies between his asylum application and then also his testimony and the interviews that he had before asylum officers. This Court has held that the alien has a burden of establishing his claim through credible evidence, and the petitioner did not do so here. The petitioner omitted from his 2011 asylum application a very important fact. And that fact was that he actually witnessed his father being killed in Guatemala prior to his departure. The petitioner has conceded that at the merits hearing that this fact was omitted from the This Court has held that although inconsistencies no longer has to go to the heart of the claim, that when the inconsistency does, it is doubtless of great weight. And that is the case here. The petitioner argues that he left Guatemala because after witnessing this one instance, him and his brother fled because of fear that they would suffer the same result that their father did. The petitioner also provided inconsistent testimony with regards to this fact. Is there evidence that his father died after he left Guatemala? And that's the point, Your Honor. We're not sure when exactly his father died. At one point in time in the hearing, he indicates that his father died before he departed Guatemala and he actually witnessed it. During the Nicarra interview, he indicated that he learned of his father's kidnapping five days after he left Guatemala. So there just seems to be different accounts of the reasons why he departed Guatemala. And that supports the adverse credibility finding. Did the IJ make an alternative merits determination on the asylum? Yes, that the petitioner was incredible. And even if the asylum application was timely filed, which it was not in this case, that the petitioner still was incredible. Okay, thank you. Okay, thank you. We'll give you a minute for rebuttal. Thank you, Your Honor. Your Honor, yes. The administrative record was on the regarding the 2009 motion to reopen was at 524 to 584 and 592 to 622 according to our opening brief. And, again, just to clarify, when the motion to reopen was ---- It's in two places? It is, Your Honor. There's two separate sections. It's fairly comprehensive because the motion to reopen included the actual motion to the board. It has to be accompanied by the actual asylum application. The asylum application was not filed in 2011. It accompanied the motion. Boards do not grant motions to reopen without accompanying substantive merits as to why are they opening it, what's the potential of this case having any success. So the motion to reopen was accompanied by the asylum application and a request for expedited processing and a request for stay because petitioner was incarcerated and was within about a week of being removed. And that's when he made his claim that counsel wasn't effective, right? Correct, and he didn't meet the Lozada requirements requiring an effective assistance of counsel. That entire package was granted by the board and remanded to the immigration court. Due to the court's calendar, it did not actually come up for a hearing until around 2011, which is, I think, why there's a little bit of confusion. But he didn't file his asylum application until 2011? No, Your Honor. It accompanied the application in 2009 to the board. It accompanied the motion to reopen. That entire package is what was heard by the immigration court in 2011. So what happened in 2011? In your brief, you conceded it was 2011. Yes, but 2011 was when the hearing was held, Your Honor, based on the motion to reopen. No, that was the date of the filing of the asylum application. Well, again, the asylum application, Your Honor, accompanied the motion. And it was all one package. But it wasn't filed. That's the whole point. Yes, Your Honor, it was filed. No, it was filed as part of the motion to reopen. It wasn't filed as an asylum application because he couldn't file it until the proceedings were reopened, right? Correct, Your Honor. Okay. We're perhaps looking at it at the same point. But exactly, you're right. We're using words pretty loosely. Once it reached the immigration court, Your Honor, it was accepted as a filing. Go ahead. So when was he allowed to file it? When he appeared for his first hearing with the immigration court in 2011 was when that case was actually before the court. And that was when the hearing was heard. And that's when the time bar was out. Did he file an asylum application in 2011? Yes, Your Honor. He didn't rely on the earlier one that he had filed when he moved to reopen? No. That's correct, Your Honor. And I assume in expediency of time, I believe I'm unable to address. If the Court is willing to leave me more time, I'd be happy to address the issue of persecution. If not, go right ahead. Thank you. Thank you, Your Honor. It's adequately briefed. The case is argued with 10 submittals.
judges: Kozinski, Wardlaw, Korman